(636 P.2d 213)

No. 52,345

STATE OF KANSAS, *Appellee,* v. TERRY MYERS, *Appellant.*

Opinion filed November 25, 1981.

Craig Shultz, of Shultz, Fisher, Monnat & Shultz, of Wichita, for the appellant.

Richard Ballinger, assistant district attorney, Robert T. Stephan, attorney general, Clark V. Owens, district attorney, and Brent Anderson, legal intern, for the appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: The defendant in a jury trial appeals his conviction of theft under K.S.A. 1980 Supp. 21-3701(*d*) and we reverse the conviction. He makes a number of claims of error in this trial. We consider only his first claim, that his motion to dismiss at the conclusion of the State's case should have been granted because of insufficiency of evidence to sustain a conviction.

The decision in this case turns upon the relative relationships four men had with a stolen 1979 Ford van. The first is Mick Smith who, about August 15, 1979, originally, we assume, took the van from the owner, arranged two different storage buildings for the van, bought parts to make the van appear to be a 1977 model, arranged to have the speedometer mileage advanced, found someone to try to sell the van with a 1977 title he furnished, and directed when and by whom the van would be driven.

The second is Richard LaMar who was well acquainted with Smith and who first saw the van in storage about September 2, and who then advanced the odometer. At least as early as September 9, he knew the van was stolen and on that date he drove the van to the second storage unit at Smith's direction.

The defendant Terry Myers is the third. He had ridden around with Smith and LaMar five or ten times before September 6, when he first saw the van. It was in the first storage building, and he

went there with Smith. They were in the building from 11 p.m. for 2½ hours. During this time there was pounding and grinding and it may fairly be assumed they were changing 1979 parts to 1977 parts, which involved changing the grille and door-post identification plate. He rode in the passenger seat when LaMar drove the van to the second storage building and he paid for gas that LaMar put in en route. He also put a license tag on the van at the start of the trip. There was no direct evidence that he was told, or otherwise knew, the van was stolen.

Terry Dean, connected with Day's Body Shop, is the fourth man. He sold the 1977 grille to Smith, gave Smith permission to use a storage unit he had rented, and this was the storage to which the van was moved on September 9. It appears that Dean had seen the van sometime earlier and knew it was a 1979 model. He accepted and filed the 1977 title. He had made no attempt to find a purchaser by September 10 when the van was taken into custody pursuant to issuance of a search warrant.

In making the above factual statements, we are guided by the mandate contained in *State v. Becknell,* 5 Kan. App. 2d 269, 271, 615 P.2d 795 (1980):

" 'In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?' *State v. Peoples,* 227 Kan. 127, Syl. ¶ 2, 605 P.2d 135 (1980).

" 'In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence, and if the essential elements of the charge are sustained by any competent evidence the conviction stands.' *State v. Racey,* 225 Kan. 404, Syl. ¶ 3, 590 P.2d 1064 (1979)."

Further, for the purpose of our review, and to narrow the scope of this decision, we are assuming a number of things to have been adequately established by the evidence, not all of which the defendant agrees were established:

1.  At all times mentioned herein the van was a stolen vehicle.

2.  On the night of September 6 when work was done to change the appearance of the van to that of a 1977 model, defendant knew the van had been stolen by another.

3.  Any actions of defendant relative to the van were done

"with intent to deprive the owner permanently of the possession, use or benefit of the owner's property."

Defendant was originally charged with a violation of K.S.A. 1980 Supp. 21-3701(*a*) and (*d*). While the State elected to dismiss the charge under section (*a*), it may be helpful to look at the relationship of those two sections. As the charge was originally made, the relevant parts of the statute are:

"Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of the owner's property.
(*a*) Obtaining or exerting unauthorized control over property; or

. . . .

(*d*) Obtaining control over stolen property knowing the property to have been stolen by another."

In interpreting the statute, we turn to definitions found in K.S.A. 1980 Supp. 21-3110(11) (which relates to K.S.A. 1980 Supp. 21-3701[*d*]) and in K.S.A. 1980 Supp. 21-3110(12) (which relates to K.S.A. 1980 Supp. 21-3701[*a*]):

"(11) 'Obtain' means to bring about a transfer of interest in or possession of property, whether to the offender or to another.
"(12) 'Obtains or exerts control' over property includes but is not limited to, the taking, carrying away, or the sale, conveyance, or transfer of title to, interest in, or possession of property."

While the definition of "obtains or exerts control" gives meaning to, and perhaps broadens, the language of K.S.A. 1980 Supp. 21-3701(*a*), the definition of "obtain" does not lead us to conclude that the phrase "obtaining control" in K.S.A. 1980 Supp. 21-3701(*d*) has anything other than its ordinary meaning. Further, the broader sweep of the definition "obtains or exerts control" may not be used by the State to support a conviction under K.S.A. 21-3701(*d*). *State v. Burnett,* 4 Kan. App. 2d 236, 239, 604 P.2d 284 (1979).

The crime upon which defendant went to trial was that, as a principal, he "obtained" control over the van, or that, as an aider, he helped someone before or while that person "obtained" control over the van. Accepting PIK Crim. 1979 Supp. 54.05 as being an accurate statement of what constitutes aiding or abetting, we note that to be criminally responsible, defendant must have acted "either before or during the commission of a crime." This language was the same as in PIK Crim. 54.05 (1971), and was approved in *State v. Duvaul,* 223 Kan. 718, 576 P.2d 653 (1978).

The undisputed evidence in this case was that at all times Mick Smith had control of the van and even directed who might drive

it. Even the driving that LaMar did with Smith following to the second storage would not amount to a release of either control or legal possession, as possession in law involves possession with intent to have control. *State v. Neal,* 215 Kan. 737, 740, 529 P.2d 114 (1974). In short, during the time defendant was connected with the van, there was never a "transfer of interest in or possession of" the van from one person to another, so that no one "obtained" control over the property during that period.

We make no comment as to whether defendant might properly have been convicted had the trial proceeded under K.S.A. 1980 Supp. 21-3701(*a*). Neither is it necessary to consider his other claims of error. Since the evidence indicated no change of control of the van during the time defendant knew anything about the van, his motion for dismissal should have been granted.

Reversed and remanded with directions to discharge the defendant.